IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **RONNIE EVANS, SR.,** | : | |
| Plaintiff, | : | |
| v. | : | No. 5:10-CV-12 (CAR) |
| **CITY OF SPARTA,** | : | |
| Defendant. | : | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Currently before the Court is Defendant City of Sparta's ("the City") Motion for Summary Judgment. The City seeks summary judgment on the claims brought by Plaintiff Ronnie Evans, Sr., under 42 U.S.C. § 1983 alleging violations of his First and Fourteenth Amendment rights. The City contends that no genuine issues of material fact remain and that Plaintiff has failed to establish any constitutional violation. For the reasons set forth below, the Court agrees and accordingly **GRANTS** the City's motion for summary judgment.

I. BACKGROUND

Plaintiff Ronnie Evans, Sr. ("Chief Evans") began working for the City of Sparta as a police officer in March of 1978. Upon the retirement of Walter Garrett as Chief of the Sparta Police Department in 1992, Plaintiff ascended to the role of Chief of Police, a position he has held continuously since that time.

Over the term of his employment, several of Chief Evans's relatives have been employed by the City and specifically by the Police Department. His brother Tommy Evans began working as an officer in 1976 and has resigned and been rehired several times since then. He is

not currently working for the Police Department. His brother Richard Evans also worked for a time for the Police Department, but left the department several years ago. Glen Ingram, his brother-in-law, currently serves as a lieutenant with the Police Department, and Thomas Clayton, his cousin, also currently serves as an officer. Including Chief Evans, the Police Department currently has eight officers. Six are African American and two are Caucasian.

The City uses a multi-step process when hiring police officers. First, Chief Evans screens applications. Chief Evans then passes on the applications of qualified applicants to Mayor William Evans ("Mayor Evans").[1] Mayor Evans reviews those applications and then makes recommendations to the City Council. The City Council ultimately makes the personnel decisions for the City.

Several personnel decisions from recent years are at issue here. In 2006, Chief Evans recommended that the City rehire Tommy Evans as a police officer. Mayor Evans passed the recommendation on to the City Council, but the City Council ultimately decided not to rehire Tommy Evans. Chief Evans also recommended the hiring of six or seven other individuals over the last several years. Those recommendations were ultimately accepted by the City Council. Several of those individuals are African American. In 2009, Chief Evans recommended that Glen Ingram, his brother-in-law, and Thomas Clayton, his cousin, be given a promotion and a raise. Although both received the promotion, neither has received the recommended raise at this time. Chief Evans also recommended in 2008 or 2009 that Lynn Walden, a white female, be promoted to sergeant, with a corresponding pay raise. The City Council accepted that recommendation, and Walden received a promotion and a raise.

Early in his career in the Sparta Police Department, Chief Evans voluntarily enrolled as a

---

[1] Mayor Evans is also Chief Evans's brother.

member of the Peace Officer's Annuity Fund ("the Fund"). Members of the Fund are required to make periodic payments to remain an active member and be eligible to one day receive annuity payments as a form of supplemental retirement. The City made payments to maintain Chief Evans as an active member until sometime in 1997. By 2001, Chief Evans was aware that payments had been stopped. At that point, he decided to receive a refund of all amounts paid to the Fund from 1986 to 1997. In 2007, Chief Evans was reinstated as an active member of the Fund and now makes his own required payments.

On January 8, 2010, Chief Evans filed a complaint against the City under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments of the United States Constitution. Discovery having closed, the City filed a Motion for Summary Judgment [Doc. 17]. Chief Evans filed a timely Response [Doc. 22], and the City a filed timely Reply [Doc. 33]. The matter is now ripe for decision.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52, 106 S. Ct. at 2511-12. When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to

the party opposing the motion. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact. See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

### III. LIABILITY UNDER 42 U.S.C. § 1983

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute creates no protected rights, but instead provides a remedy for a violation of constitutional rights committed under color of state law. The City does not dispute that it acted under color of state law. Instead, the City argues that no constitutional violation has occurred. Thus, in order to prevail on this motion for summary judgment, the City must show that Chief Evans lacks evidence that, if ultimately accepted by the factfinder, would establish a

violation of his constitutional rights.[2]

## IV. ANALYSIS

The violations alleged by Chief Evans fall into two main categories: actions regarding his retirement benefits and personnel actions taken by the City Council. In all cases, he contends that he was discriminated against because of his familial associations and his race.

### A.     Retirement Benefits

Neither the Complaint nor Plaintiff's Response to the summary judgment motion clearly indicates whether Chief Evans contends that the City violated his rights by discontinuing payments to the Fund or by refusing to pay him retirement benefits directly. His Response references the Fund and the discontinued payments several times, but it also makes note of direct retirement payments made by the City to his predecessor, Chief Walter Garrett. In any event, summary judgment is due to be granted to the City on either theory.

Any alleged violation based on the discontinued payments to the Fund is time barred because the Complaint was filed outside the statute of limitations. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal

---

[2] Because Chief Evans brought this suit against the City of Sparta, he must also establish that the violation was the result of a city policy or custom. Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1293 (11th Cir. 2009) ("A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom."). In this case, the acts of the City Council, as the governing body of the City, constitute municipal policy. See Little v. City of North Miami, 805 F.2d 962, 967 (11th Cir. 1986); see also Owen v. City of Independence, Mo., 445 U.S. 622, 633 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

injury actions in the state where the § 1983 action has been brought." McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). The applicable statute of limitations in Georgia is two years. See O.C.G.A. § 9-3-33. Chief Evans filed his Complaint January 8, 2010. The record shows that the City discontinued payments to the Fund in 1997 and that at the latest, he was aware the City had discontinued contributions sometime in 2001, well outside of the two year period. See McNair, 515 F.3d at 1173 (noting that "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights" (quotation marks omitted)).

In regards to retirement benefits from the City, the record shows that Chief Evans currently occupies the position of Chief of Police and is not retired. Thus, he is not yet eligible to receive retirement benefits. The City cannot have violated his constitutional rights by not giving him benefits he is not yet entitled to receive.

### B. Personnel Actions

Chief Evans contends that the City violated his First and Fourteenth Amendment rights by refusing to hire or refusing to grant promotions or raises to several individuals related to him. Again, taking the facts in the light most favorable to Chief Evans, he has failed to produce sufficient evidence to establish that the City is liable for any constitutional violation in its personnel decisions. Accordingly, summary judgment must be granted in favor of the City.

#### 1. Equal Protection

Chief Evans contends that the City's personnel decisions violate the Equal Protection Clause of the Fourteenth Amendment because they were racially motivated. Here, it is unclear whether Chief Evans's argument is that his recommendations were not followed because he is

African-American or that African-American individuals were treated less favorably in personnel decisions.  Laying aside the question of whether either theory presents a sound legal basis for a section 1983 claim against the city on Chief Evans's behalf, the evidence presented does not support either claim.  First, the evidence shows that the City Council has ultimately accepted many of Chief Evans's recommendations over the last several years.  Although the City Council did not rehire Tommy Evans,[3] it did hire six or seven other individuals on Chief Evans's recommendation.  Second, the record does not support the claim that the City engages in a policy of disadvantaging African Americans in its personnel decision. Although Glen Ingram and Thomas Clayton have not received their recommended raises at this time, the record demonstrates that several of the new hires over the last several years are African American.

In any event, Chief Evans has failed to come forth with any evidence indicating that any of these actions were taken on the basis of race.  In fact, during his deposition, Chief Evans testified that he believed that the City did not rehire Tommy Evans because of Tommy's past legal troubles with the City and because Tommy was his brother.  He never even asserted a belief that Tommy Evans was not hired because of his race.  In regards to Ingram and Clayton, the City produced evidence in the form of Mayor Evans's affidavit indicating that Ingram and Clayton did not receive a raise because the City budget would not permit one. [Doc. 18].  In response, Chief Evans has not come forward with any evidence or even statement of belief that the actions were taken based on race, but instead avers again and again that the Ingram and Clayton did not receive raises because they were "loyal family members."

---

[3] Any claim based on the failure to rehire Tommy Evans would also be time barred because that decision was made in 2006, outside the two year statute limitations.

Ultimately, although Chief Evans alleged in the Complaint that the decisions were racially motivated, he has continually claimed throughout the Complaint and the Response to the summary judgment motion that these personnel decisions were motivated by the familial relationships of the individuals involved. Chief Evans and his relatives may be African American, but that does not mean that their family relations serve as a proxy for race.

2. Associational Rights

Chief Evans also contends that the City's personnel decisions violate the associational protections found in the First and Fourteenth Amendments. Again, the exact contours of Chief Evans's claim are difficult to discern. He does not contend that the City's actions were taken pursuant to a generally applicable anti-nepotism policy or any other generally applicable personnel policy. His complaint is instead centered on the treatment of his family. The specific formulation of the City's alleged animus is not clear. At various times, Chief Evans seems to contend that the City is discriminating against relatives of Tommy Evans because they are related to Tommy Evans, relatives of Chief Evans because they are related to Chief Evans, or the entire Evans extended family in general. In the end, his claims are best read as arguing that the City has punished him because of his relationship with his brother Tommy Evans. [See Doc. 22 at 11 ("Plaintiff has maintained that he has been subjected to an ongoing pattern of adverse actions because of his familial association with his siblings, primarily because of his association with Tommy Evans who has been an active of employee's rights over the course of his career.")].

The Constitution protects "the right to enter into certain intimate or private relationships, such as family relationships." Parks v. City of Warner Robins, Ga., 43 F.3d 609, 615 (11th Cir.

1995).  That right is only infringed, however, when a policy "directly and substantially" interferes with those relationships.  Id. at 616.  In the employment context, that interference must be in the form of an adverse employment action.  McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir. 1994) ("For a public employee to establish that an employment action has infringed a constitutional right the employee also must demonstrate that he or she has suffered some sort of adverse employment action for exercising the right.").  Even taken in the light most favorable to Chief Evans, the personnel decisions at issue here do not violate his associational rights protected under the First or Fourteenth Amendments.

The great majority of the allegedly unconstitutional personnel decisions did not injure Chief Evans.  Chief Evans points to several instances where the City Council refused to hire, promote, or give a raise to other individuals related to him after he recommended the action.  Chief Evans claims he was injured by these decisions because he was forced to work harder and longer hours.  See Complaint ¶¶ 22, 32.  Even assuming such extra exertion could constitute an adverse employment action,[4] the record does not bear that allegation out.  The record indicates that the City Council has approved a number of recommended hires over the last several years and that Glen Ingram and Thomas Clayton are still part of the department despite not receiving the recommended raises.  Thus, the record indicates that the City Council's failure to rehire Tommy Evans or give raises to Glen Ingram or Thomas Clayton has not resulted in any change

---

[4] There is ample reason to believe it would not.  See McCabe, 12 F.3d at 1563 ("'Adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands.").  Chief Evans's vague allegation that he was forced to "work harder" because other individuals were not hired presents a less substantial effect than an employment action that directly affected his position, pay, job duties, or chances for advancement.

in the number of officers employed by the police department. In other words, any alleged extra exertion that Chief Evans must undertake is a product of the size of the police force that the City's budget can tolerate, not the City Council's failure to rehire Tommy Evan or to give raises to Glen Ingram or Thomas Clayton.

In his response to the motion for summary judgment, Chief Evans makes one belated allegation of an adverse employment action taken directly against him. He claims that the City Council denied him a raise sometime in 2009. To the extent that Chief Evans wishes to raise the claim that he was denied a raise because of familial associations, the Court will not consider this new claim first raised at this late stage. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (noting that a party may not assert new claims at the summary judgment phase).

Even if the Court were to consider that claim, it suffers from various other shortcomings. First, there is scant evidence in support of the allegation that Chief Evans was denied a raise. The allegation was not lodged in the Complaint, even though Chief Evans pointed out other officers that were allegedly denied raises. Chief Evans also failed to raise the allegation in his deposition, even though he spoke at some length on the denial of raises to other officers. Even when defense counsel questioned him as to how the City's alleged animus had affected him, he never mentioned the denial of a raise. Moreover, the allegation itself is conclusory at best. Chief Evans never states when and how the requested raise was proposed or when and how it was denied. Indeed, his late-coming allegation is somewhat at odds with his deposition testimony that there was no set time frame for when he would receive raises, and that the decision was at the discretion of the City.

Furthermore, even assuming that the City Council did deny Chief Evans a raise in 2009, the evidence fails to demonstrate that the Council's decision was based on some animus against Tommy Evans. The Complaint and Chief Evans's deposition intimate that the City Council's animus toward Tommy Evans, and by extension himself as well, was because of one or multiple lawsuits filed by Tommy Evans against the City. By all indications, however, those lawsuits happened five to ten years ago. This temporal gap is simply too wide to support the inference that the City denied Chief Evans a raise in 2009 in retaliation for a lawsuit filed by Tommy Evans ten years earlier.

Moreover, the City produced evidence in the form of Mayor Evans's affidavit[5] that any failure to grant raises was the result of lack of funds, not discriminatory or retaliatory animus. Obviously that statement was not directed explicitly at the City's alleged denial of a raise to Chief Evans because he had not yet raised that claim yet. Nonetheless, it stands as evidence of a non-discriminatory and non-retaliatory reason for the denial of any raises. Although one individual, Lynn Walden, was given a raise during that time frame, she is a poor comparator to prove that the City's non-retaliatory reason was false in relation to Chief Evans. Lynn Walden was promoted to a soon-to-be-vacated sergeant position for which sergeant's pay was already allocated. In 2009, Chief Evans was and remained the Chief of Police; thus, any raise he allegedly requested or believed he was due was not in connection with a promotion to a position for which higher funding already existed.[6]

---

[5] The Court notes again that Mayor Evans is the brother of Chief Evans and is also allegedly one of the targets of the City Council's purported anti-Evans bias. Still, he testified that the denial of raises had nothing to do with family connections.

[6] The Court notes that there is also a substantial legal question as to whether the

V. CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment is **GRANTED**.

SO ORDERED this 17th day of August, 2011.

        S/  C. Ashley Royal
        C. ASHLEY ROYAL, JUDGE
        UNITED STATES DISTRICT COURT

bcw

---

claim that an individual was denied a raise because of or in retaliation for a lawsuit filed by his brother is even cognizable under the familial association protections of the First or Fourteenth Amendments.  Because the claim has a number of other shortcomings, the Court need not reach that question.